**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| DR. DAVID S. MURANSKY, individually, and on behalf of others similarly situated, ) ) ) | |
| Plaintiff, ) ) | **CLASS ACTION** |
| v. ) ) | **JURY TRIAL DEMANDED** |
| THE CHEESECAKE FACTORY, INC., d/b/a THE CHEESECAKE FACTORY a Delaware corporation, ) ) ) ) | |
| Defendant. ) ) | |

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE**
**FAIR AND ACCURATE CREDIT TRANSACTIONS ACT (FACTA)**

Plaintiff DR. DAVID S. MURANSKY ("Plaintiff"), on behalf of himself and other similarly situated individuals, alleges the following, in relevant part, upon information and belief, and his own personal knowledge.

### I.   NATURE OF THE CASE

1. This action arises from Defendant's violation of the Fair and Accurate Credit Transactions Act ("FACTA") amendment to the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, as amended (the "FCRA"), which requires Defendant to truncate certain credit card information on receipts. Despite the clear language of the statute, Defendant willfully, knowingly, or in reckless disregard of the statute, failed to comply with the FCRA by printing ten (10) of the credit card numbers on the receipt. As such, Plaintiff and certain other consumers who conducted business with Defendant during the time frame relevant to this complaint, each of whom paid for goods using a credit or debit card and were entitled to receive a truncated receipt, suffered violations of § 1681c(g). As a result of Defendant's unlawful conduct, Plaintiff and the

Class have suffered an invasion of their privacy, have been burdened with an elevated risk of identity theft, especially as the receipt also contains the card holders first and last name, and are entitled to an award of statutory damages and other relief as further detailed herein.

## II.  JURISDICTION AND VENUE

2. This Court has jurisdiction under 15 U.S.C. § 1681p, and 28 U.S.C. §§ 1331 and 1337 because the claims in this action arise under violation of a federal statute.

3. Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district. Defendant conducts business in this district and its contacts here are sufficient to subject them to personal jurisdiction.

## III.  PARTIES

4. Plaintiff Dr. David S. Muransky ("Plaintiff") is a natural person who, at all times relevant herein, resides in Broward County, Florida.

5. Defendant, The Cheesecake Factory, Inc. ("Defendant"), is a Delaware corporation that does business under the fictitious name "The Cheesecake Factory®." The address of Defendant's principal executive offices is 26901 Malibu Hills Road, Calabasas Hills, CA 91301, and its registered agent for service of process in the state of Delaware is Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, DE 19808.

6. Defendant owns and operates at least 208 full-service, casual dining restaurants throughout the U.S.A. and Florida, including 194 restaurants under The Cheesecake Factory®

mark; 13 restaurants under the Grand Lux Cafe® mark; and one restaurant under the RockSugar Pan Asian Kitchen® mark.[1] At least 20 of those restaurants are located in Florida.

7. As of 2003, the average restaurant served 3,000 people a day, and brought in $1,000 per square foot in sales, or $11 million a year. The average Cheesecake Factory customer check was $16. The busiest Cheesecake Factory, in Chicago, did $18 million in sales that year.[2]

8. Since 2003, Defendant's business continued to grow. The average check in 2015 was $20.80[3] and Defendant's average sales per restaurant operating week increased 0.7% to $208,400 in the third quarter of fiscal 2016 compared to $206,950 in the third quarter of fiscal 2015, representing average yearly sales of approximately $10.8 million per restaurant as of the third quarter of fiscal 2016.[4]

## IV. FACTUAL ALLEGATIONS

### A. Background of FACTA

9. Identity theft is a serious issue affecting both consumers and businesses. In 2015, the FTC received over 490,000 consumer complaints about identity theft, representing a 47 percent increase over the prior year, and the Department of Justice estimates that 17.6 million Americans were victims of identity theft in 2014.[5]

---

[1] THE CHEESECAKE FACTORY, http://investors.thecheesecakefactory.com (last visited Jan. 24, 2017).

[2] *See* THE CHEESECAKE FACTORY, http://investors.thecheesecakefactory.com (last visited Jan. 24, 2017).http://investors.thecheesecakefactory.com/phoenix.zhtml?c=109258&p=irol-newsArticle&ID=479309 (last visited Jan. 26, 2017).

[3] THE CHEESECAKE FACTORY, http://investors.thecheesecakefactory.com/phoenix.zhtml?c=109258&p=irol-cheesecakefactory (last visited Jan. 27, 2017).

[4] Cheesecake Factory, Inc., Quarterly Report (Form 10-Q) (Sept. 27, 2016).

[5] *FTC Announces Significant Enhancements to IdentityTheft.gov*, FTC (Jan. 28, 2016), https://www.ftc.gov/news-events/press-releases/2016/01/ftc-announces-significant-enhancements-identitytheftgov.

10. Congress enacted FACTA to prevent actual harm. See Pub. L. No. 108-159 (December 4, 2003) ("An Act . . . to prevent identity theft . . . and for other purposes.")

11. "[I]dentity theft is a serious problem, and FACTA is a serious congressional effort to combat it…the less information the receipt contains the less likely is an identity thief who happens to come upon the receipt to be able to figure out the cardholder's full account information." *Redman v. Radioshack Corp.*, 768 F.3d 622, 626 (7th Cir. 2014).

12. Upon signing FACTA into law, President George W. Bush remarked that "[s]lips of paper that most people throw away should not hold the key to their savings and financial secrets." 39 Weekly Comp. Pres. Doc. 1746, 1757 (Dec. 4, 2003). President Bush added that the government, through FACTA, was "act[ing] to protect individual privacy." *Id.*

13. One such FACTA provision was specifically designed to thwart identity thieves' ability to gain sensitive information regarding a consumer's credit or bank account from a receipt provided to the consumer during a point of sale transaction, which, through any number of ways, could fall into the hands of someone other than the consumer.

14. Codified at 15 U.S.C. § 1681c(g), this provision states the following:

> ***Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.***

15 U.S.C. § 1681c(g) (the "Receipt Provision").

15. After enactment, FACTA provided three (3) years in which to comply with its requirements, mandating full compliance with its provisions no later than December 4, 2006.

16. The requirement was widely publicized among retailers and the FTC. For example, on March 6, 2003, in response to earlier state legislation enacting similar truncation requirements, then-CEO of Visa USA, Carl Pascarella, explained that, "Today, I am proud to

announce an additional measure to combat identity theft and protect consumers. Our new receipt truncation policy will soon limit cardholder information on receipts to the last four digits of their accounts. The card's expiration date will be eliminated from receipts altogether. . . . The first phase of this new policy goes into effect July 1, 2003 for all new terminals. . . . ."[6] Within 24 hours, MasterCard and American Express announced they were imposing similar requirements.

17.     Card issuing organizations proceeded to require compliance with FACTA by contract, in advance of FACTA's mandatory compliance date. For example, the publication, "Rules for Visa Merchants," which is distributed to and binding upon all merchants that accept Visa cards, expressly requires that "only the last four digits of an account number should be printed on the customer's copy of the receipt" and "the expiration date should not appear at all."[7]

18.     Because a handful of large retailers did not comply with their contractual obligations with the card companies and the straightforward requirements of FACTA, Congress passed The Credit and Debit Card Receipt Clarification Act of 2007 in order to make technical corrections to the definition of willful noncompliance with respect to violations involving the printing of an expiration date on certain credit and debit card receipts before the date of the enactment of this Act.[8]

19.     Importantly, the Clarification Act did not amend FACTA to allow publication of the expiration date of the card number. Instead, it simply provided amnesty for certain past violators up to June 3, 2008.

---

[6] *Visa USA Announces Account Truncation Initiative to Protect Consumers from ID Theft*, PR NEWSWIRE (Mar 06, 2003),
http://www.prnewswire.com/news-releases/visa-usa-announces-account-truncation-initiative-to-protect-consumers-from-id-theft-74591737.html.
[7]     *Rules     for     Visa     Merchants*,     VISA     (Sept.     1,     2007),
http://www.runtogold.com/images/rules_for_visa_merchants.pdf.
[8] *H.R. 4008 (110th): Credit and Debit Card Receipt Clarification Act of 2007*, GOVTRACK,
 https://www.govtrack.us/congress/bills/110/hr4008/text (last visited Jan. 24, 2017).

20. In the interim, card processing companies continued to alert their merchant clients, including Defendant, of FACTA's requirements. According to a Visa Best Practice Alert in 2010:

> Some countries already have laws mandating PAN truncation and the suppression of expiration dates on cardholder receipts. For example, the United States Fair and Accurate Credit Transactions Act (FACTA) of 2006 prohibits merchants from printing more than the last five digits of the PAN or the card expiration date on any cardholder receipt. (Please visit http://www.ftc.gov/os/statutes/fcrajump.shtm for more information on the FACTA.) To reinforce its commitment to protecting consumers, merchants, and the overall payment system, Visa is pursuing a global security objective that will enable merchants to eliminate the storage of full PAN and expiration date information from their payment systems when not needed for specific business reasons. To ensure consistency in PAN truncation methods, Visa has developed a list of best practices to be used until any new global rules go into effect.

21. As noted above, the processing companies have required that credit card or debit card expiration dates not be shown since 2003 and still require it. For example, American Express requires:

> Pursuant to Applicable Law, truncate the Card Number and do not print the Card's Expiration Date on the copies of Charge Records delivered to Card Members. Truncated Card Number digits must be masked with replacement characters such as "x," "*," or "#," and not blank spaces or numbers.

22. Similarly, MasterCard required in a section titled Primary Account Number (PAN) truncation and Expiration Date Omission:

> A Transaction receipt generated by an electronic POI Terminal, whether attended or unattended, must not include the Card expiration date. In addition, a Transaction receipt generated for a Cardholder by an electronic POI Terminal, whether attended or unattended, must reflect only the last four digits of the primary account number (PAN). All preceding digits of the PAN must be replaced with fill characters, such as "X," "*," or "#," that are neither blank spaces nor numeric characters.

23. According to data from the Federal Trade Commission's 2015 Consumer Sentinel Network Data Book, Florida with its 306,133 complaints ranks No. 1 for the highest per capita

rate of reported fraud and other types of complaints. For identity theft, Florida is ranked No. 3 in the country with a total of 44,063 complaints. Also, eight of the top 20 metro areas for identity theft are in Florida, according to the report. First is the Homosassa Springs area with 1290.0 complaints per 100,000 people, and the Miami area counts 482.3 complaints per 100,000 people.[9]

24. So problematic is the crime of identity theft that the three main credit reporting agencies, Experian, Equifax, and Transunion, joined to set-up a free website (http://www.annualcreditreport.com) in order to comply with FACTA requirements and to provide the citizens of this country with a means of monitoring their credit reports for possible identity theft.

25. FACTA clearly prohibits the printing of more than the last five (5) digits of the card number to protect persons from identity theft.

### B. *Defendant's Prior Knowledge of FACTA*

26. Defendant had actual knowledge of the statute's requirements. In fact, Defendant's Senior Systems Analyst's from 2006 to 2013 specific task among others was ensuring FACTA compliance, confirming that Defendant has been long since aware of the requirements to truncate certain credit card information on receipts.[10]

27. Most of Defendant's business peers and competitors currently and diligently ensure their credit card and debit card receipt printing process remains in compliance with

---

[9] *Consumer Sentinel Network Data Book for January-December 2015*, Federal Trade Commission (February 2016), https://www.ftc.gov/system/files/documents/reports/consumer-sentinel-network-data-book-january-december-2015/160229csn-2015databook.pdf.
[10] Bruno Manetta, LINKEDIN, https://www.linkedin.com/in/brunomanetta (last visited Jan. 24, 2017).

FACTA by consistently verifying their card machines and devices comply with the truncation requirement. Defendant could have readily done the same.

28. Not only was Defendant so informed not to print the expiration date of credit or debit cards, it was contractually prohibited from doing so. Defendant accepts credit cards and debit cards from all major issuers; these companies set forth requirements that merchants, including Defendant, must follow, including FACTA's redaction and truncation requirements.

29. Upon information and belief, the violations at issue arose when Defendant installed dozens (if not hundreds) of new credit and debit card payment systems in its many restaurants across the United States.

30. Upon information and belief, prior to the rollout of the new point-of-sale system, Defendant had a written policy in place requiring the truncation of credit card account numbers; this is evidenced by the fact that prior to the installation of the aforementioned retail system, Defendant was actually truncating credit card account numbers.

31. Upon information and belief, a manual was provided to Defendant's restaurants for the operation of the new point-of-sale system which explained that the retailer is able to determine which fields will appear on a printed receipt and further explained that the retailer is able to truncate credit card numbers and mask expiration dates.

32. Upon information and belief, it would take an individual less than one minute to run a test receipt in order to determine whether the point-of-sale system was in compliance with federal law(s) or Defendant's own alleged written policy requiring the truncation of credit card numbers.

### C. *Plaintiff's Factual Allegations*

33. On or about January 22, 2017, Plaintiff purchased certain goods from one of Defendant's restaurants located at 14559 SW 5th St. Pembroke Pines, Broward County, Florida 33027.

34. Plaintiff paid for the subject goods using his personal American Express® credit card at which time he was presented with an electronically printed receipt bearing the first six (6), along with the last four (4) digits of his credit card account number.

35. In addition to bearing first six (6), along with the last four (4) digits of his credit card account number, the receipt identifies whether the subject method of payment is a debit card (as opposed to a credit card), as well as the identity of the individual to whom the card is issued. The receipt also identifies the store location, transaction date and time, and name of the cashier.

### D. *Defendant's Misdeeds*

36. At all times relevant herein, Defendant was acting by and through its subsidiaries, agents, servants and/or employees, each of which were acting within the course and scope of their agency or employment, and under the direct supervision and control of Defendant.

37. At all times relevant herein, the conduct of the Defendant, as well as that of its subsidiaries, agents, servants and/or employees, was in willful, knowing, or reckless disregard for federal law and the rights of the Plaintiff and other members of the class.

38. Upon information and belief, the violations at issue have taken place at dozens of Cheesecake Factory Inc.'s restaurants, including but not limited to the restaurant located at 14559 SW 5th St. Pembroke Pines, Broward County, Florida 33027.

39. It is Defendant's policy and procedure to issue an electronically printed receipt to individuals at the point of sale – i.e., immediately upon receipt of credit card payment.

40. Notwithstanding the fact that it has extensive knowledge of the requirements of FACTA and the dangers imposed upon consumers through its failure to comply, Defendant, as of the date this action was commenced, continues to issue point of sale receipts, which contain the first six (6) and last four (4) digits of credit and debit card account numbers.

41. By shirking the requirements of a federal privacy statute by not complying with the Receipt Provision, Defendant has caused consumers actual harm, not only because consumers were uniformly burdened with an elevated risk of identity theft, but because a portion of the sale from credit or debit card transaction is intended to protect consumer data, including the censoring of credit or debit card digits as required by both state and federal laws.

42. Defendant also invaded Plaintiff's and other putative Class Members' privacy by disclosing their private information to those of Defendant's employees who handled the receipts, as well as other persons who might find the receipts in the trash or elsewhere.

43. To paraphrase the words of the Honorable Judge Posner, Defendant is engaged "in conduct that creates an unjustifiably high risk of harm that is either known or so obvious that it should be known…" *Redman v. RadioShack Corp*., 768 F.3d 622, 627 (7th Cir. 2014) (quoting *Farmer v. Brennan*, 511 U.S. 825, 836, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)).

44. A company subject to the FCRA can be liable for willful violations of the FCRA within the meaning of §1681n if they show a "reckless disregard" for the law. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69 (2007).

### V.    CLASS ACTION ALLEGATIONS

45. This action is also brought as a Class Action under Fed. R. Civ. P. 23. Plaintiff proposes the following class, defined as follows, subject to modification by the Court as required:

> *(i) All persons in the United States (ii) who, when making payment at one of Cheesecake Factory, Inc.'s restaurants across the country (iii) made such payment using a credit or debit card (iv) and were provided with a point of sale receipt (v) which displayed more than the last 5 digits of the card number and/or the expiration date expiration date of the credit or debit card (vi) within the two (2) years prior to the filing of the complaint through the date of the order on certification.*

46.    Plaintiff falls within the class definition and is a member of the class. Excluded from the class is Defendant and any entities in which Defendant has a controlling interest, Defendant's agents and employees, Plaintiff's attorneys and their employees, the Judge to whom this action is assigned and any member of the Judge's staff and immediate family, and claims for personal injury, wrongful death, and/or emotional distress.

### A.  Certification Under Either Rule 23(b)(2) or (b)(3) is Proper.

47.    The members of the class are capable of being described without managerial or administrative problems. The members of the class are readily ascertainable from the information and records in the possession, custody or control of Defendant.

48.    Defendant operates over 200 restaurants throughout the United States, accepts credit cards and debit cards at each and, upon information and belief, prints receipts reflective of credit card or debit card transactions. Therefore, based upon Defendant's sales figures, *supra*, it is reasonable to conclude that the class is sufficiently numerous such that individual joinder of all members is impractical. The disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits. The Class can be identified through Defendant's records or Defendant's agents' records.

49.    Upon information and belief, most purchases at Defendant's restaurants are paid with a consumer card, rather than a business card. To the extent this is an issue, the payments made with the two types of cards are easily discernible: merchants are charged different

interchange fees for card transactions that vary based on whether the card is a business card or a consumer card. There are different interchange categories and codes assigned to each transaction that distinguish whether a card used for a transaction is a business card or a consumer card. Defendant and its merchant bank could easily identify whether a particular transaction involved a business card or a consumer card.

50. Further, the first six (6) digits of a credit or debit card would readily determine whether the corresponding card is a business or consumer card. That is because the first six (6) digits of a credit or debit card number constitute what is known as the Bank Identification Number ("BIN") that represents several items of information, including whether it is a consumer card or commercial (business) card. Finally, Visa, MasterCard, American Express and Discover only allow specific BINs and BIN ranges to identify consumer cards, and specific BINs and BIN ranges identify commercial (business) cards. Consumer cards and business cards do not share the same BINs or BIN ranges.

51. There are common questions of law and fact that predominate over any questions affecting only the individual members of the class. The wrongs alleged against Defendant are statutory in nature and common to each and every member of the putative class.

52. While all Class Members have experienced actual harm as previously explained herein, this suit seeks only statutory damages and injunctive relief on behalf of the class and it expressly is not intended to request any recovery for personal injury and claims related thereto. Plaintiff reserves the right to expand the class definition to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

53. There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. The questions of law and fact to the class predominate over questions that may affect individual Class Members, including the following:

   a. Whether, within the two (2) years prior to the filing of this Complaint, Defendant and/or its agents accepted payment by credit or debit card from any consumer and subsequently gave that consumer a printed receipt upon which more than the last five (5) digits of the card number or the expiration date;

   b. Whether Defendant's conduct was willful and reckless;

   c. Whether Defendant is liable for damages, and the extent of statutory damages for each such violation; and

   d. Whether Defendant should be enjoined from engaging in such conduct in the future.

54. As a person that patronized one of Defendant's restaurants and received a printed receipt containing more than the last five (5) digits of his credit card, Plaintiff is asserting claims that are typical of the proposed class. Plaintiff will fairly and adequately represent and protect the interests of the class in that Plaintiff has no interests antagonistic to any member of the class.

55. The principal question is whether Defendant violated section 1681c(g) of the FCRA by providing Class Members with electronically printed receipts in violation of the Receipt Provision. The secondary question is whether Defendant willfully, knowingly, or recklessly provided such electronically printed receipts, despite knowledge of the unlawful nature of such policy.

56. Plaintiff and the members of the class have all suffered harm as a result of the Defendant's unlawful and wrongful conduct. Absent a class action, the class, along with

countless future patrons of Defendant's many retail establishments, will continue to face the potential for irreparable harm. In addition, these violations of law would be allowed to proceed without remedy and Defendant will continue such illegal conduct. Because of the size of the individual Class Members' claims, few Class Members could afford to seek legal redress for the wrongs complained of herein.

57. Defendant's defenses are and will be typical of and the same or identical for each of the members of the class and will be based on the same legal and factual theories. There are no unique defenses to any of the Class Members' claims.

58. A class action is a superior method for the fair and efficient adjudication of this controversy. Class-wide damages are essential to induce Defendant to comply with federal law. The interest of Class Members in individually controlling the prosecution of separate claims against Defendant is small. The maximum statutory damages in an individual action for a violation of this statute are minimal. Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

59. Defendant has acted on grounds generally applicable to the class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the class as a whole.

### COUNT I – VIOLATIONS OF 15 U.S.C. § 1691(c)(g)

60. 15 U.S.C. §1681c(g) states as follows:

*Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.*

61. This section applies to any "device that electronically prints receipts" (hereafter "Devices") for point of sale transactions. 15 U.S.C. §1681c(g)(3).

62. Defendant employs the use of said Devices for point of sale transactions at the various locations of Defendant.

63. On or before the date on which this complaint was filed, Plaintiff and members of the class were provided receipt(s) by Defendant that failed to comply with the Receipt Provision.

64. At all times relevant to this action, Defendant was aware, or should have been aware, of both the Receipt Provision as well as the need to comply with said provision.

65. Notwithstanding the three-year period to comply with FACTA and its accompanying provisions, nor the subsequent years since FACTA became effective; and having knowledge of the Receipt Provision and FACTA as a whole; Defendant knowingly, willfully, intentionally, and/or recklessly violated and continues to violate the FCRA and the Receipt Provision.

66. By printing more than the last five (5) digits of Plaintiff's credit card number on Plaintiff's transaction receipt, Defendant caused Plaintiff to suffer a heightened risk of identity theft, especially as the receipt has the full name of the card holder on the it; exposed Plaintiff's private information to those of Defendant's employees who handled the receipt and forced Plaintiff to take action to secure or destroy the receipts.

67. As a result of Defendant's willful violations of the FCRA, Plaintiff and members of the class continue to be exposed to an elevated risk of identity theft. Defendant is liable to Plaintiff and members of the class pursuant to 15 U.S.C. § 1681n for statutory damages, punitive damages, attorney's fees and costs.

**WHEREFORE**, Plaintiff Dr. David. S. Muransky respectfully requests that this Court enter judgment in his favor and the class, and against Defendant Cheesecake Factory, Inc. for:

a. An Order granting certification of the Class;

b. Statutory damages;

c. Punitive damages;

d. Injunctive relief;

e. Attorneys' fees, litigation expenses and costs of suit; and

f. Such other and further relief as the Court deems proper under the circumstances.

## JURY DEMAND

Plaintiff demands a trial by jury on all counts.

Dated: January 30, 2017

    Respectfully submitted,

    By: /s/ *Keith J. Keogh*
    Keith J. Keogh, Esq. (Fla. Bar No. 126335)
    KEOGH LAW, LTD.
    55 W. Monroe St., Ste. 3390
    Chicago, IL 60603
    Telephone: (312) 726-1092
    Facsimile: (312) 726-1093
    Keith@KeoghLaw.com

    *Attorney for Plaintiff and the Proposed Class*