**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 17-cv-60229-JEM**

DR. DAVID S. MURANSKY, individually,
and on behalf of others similarly situated,

      Plaintiff,

v.

THE CHEESECAKE FACTORY, INC.,
d/b/a THE CHEESECAKE FACTORY a
Delaware corporation,

        Defendant.

---

## DEFENDANT'S MOTION TO DISMISS AND MEMORANDUM OF LAW IN SUPPORT

Defendant THE CHEESECAKE FACTORY INCORPORATED ("The Cheesecake Factory" or "Defendant"), pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6), moves to dismiss the Class Action Complaint filed by Dr. David Muransky ("Plaintiff") for lack of subject matter jurisdiction and failure to state a claim.[1]

**Memorandum of Law**

**I.     INTRODUCTION.**

On January 22, 2017, Plaintiff allegedly bought food at The Cheesecake Factory's restaurant located in Pembroke Pines, Florida, and paid by credit card.  Plaintiff alleges that he was presented with a printed receipt that truncated imperfectly the digits on his American Express® credit card by displaying the first six and the last four digits.  Plaintiff does not allege he lost money, that his credit suffered, or that his identity was stolen.  In fact, Plaintiff alleges no actual harm at all.  Nevertheless, on January 30, 2017, Plaintiff filed a national class action

---

[1] The Cheesecake Factory is also filing a Motion to Transfer contemporaneously herewith, and this Motion to Dismiss is filed without waiver of the arguments raised therein.

against The Cheesecake Factory alleging a purported violation of the Fair and Accurate Credit Transactions Act, 15 U.S.C. § 1681c(g) ("FACTA"), an amendment to the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA").  Plaintiff alleges that The Cheesecake Factory violated FACTA by imperfectly truncating the digits on his credit card and displaying more than five digits of his credit card number on the printed receipt.

For this, Plaintiff nominates himself to represent a putative nationwide class, even though he identifies no one else who had a similar experience.  Armed with nothing but his own receipt and "information and belief," Plaintiff alleges that "the violations at issue arose when Defendant installed dozens (if not hundreds) of new credit and debit card payment systems in its many restaurants across the United States."  Complaint ("Compl."), ¶ 29.  Although from the Complaint it appears that Plaintiff was a one-time purchaser, he nonetheless alleges that "the violations at issue have taken place at dozens of Cheesecake Factory Inc.'s restaurants, including but not limited to the restaurant located at 14559 SW 5th St. Pembroke Pines, Broward County."  Compl. ¶ 38.

## II.   <u>SUMMARY OF ARGUMENT</u>.

Plaintiff's Class Action Complaint should be dismissed for lack of subject matter jurisdiction because Plaintiff has failed to plead anything more than a bare, one-time statutory violation.  As such, Plaintiff has failed to allege a "concrete injury" to him sufficient to confer subject matter jurisdiction on the Court.  *Spokeo, Inc. v. Robins*, -- U.S. --, 136 S.Ct. 1540 (2016).  Plaintiff merely alleges a bare violation of FACTA that he received a printed receipt with more than five digits of his credit card number.  Pursuant to the holdings of the Eleventh Circuit, the Seventh Circuit, as well as other Circuits, Plaintiff ***must allege a concrete injury*** even when he pleads a statutory violation.  *See* § IV, *infra*.

Defendant is not unmindful that other courts in this District have reached a contrary conclusion in the past, but respectfully submits that those courts did not have the benefit of newly-developed Circuit and other precedent at the time of their rulings.  *See* § IV.D, *infra*. Defendant respectfully submits that the court in those cases:  (1) relied on an Eighth Circuit opinion expressing an "absolutist view," a high-water mark from which subsequent cases have receded; (2) did not have the benefit of recent Eleventh Circuit precedent interpreting *Spokeo*; and (3) did not have the benefit of recent authority from other Circuits. *See* § IV.D, *infra*.

Plaintiff's Complaint should also be dismissed for failure to state a plausible claim for a "willful" FACTA violation by engaging in either "knowing" or "reckless" conduct.  *See* § V, *infra*.  Plaintiff credits The Cheesecake Factory with a 10-year unblemished track record of FACTA compliance until its recent installation of "new credit and debit card payment systems." Compl., ¶¶ 15, 29-30 ("…prior to the installation of the aforementioned retail system, Defendant was actually truncating credit card account numbers").  By Plaintiff's figures,[2] The Cheesecake Factory has processed tens of millions of credit or debit card transactions with properly-truncated credit or debit card digits in the ten years since FACTA was enacted.  *Id.*, ¶¶ 7, 15, 29-30.  In fact, Plaintiff freely acknowledges that not only did The Cheesecake Factory "ha[ve] a written policy in place requiring the truncation of credit card account numbers," but it also had a "Senior Systems Analyst" in charge of "ensuring FACTA compliance."  *Id.*, ¶¶ 26, 30.

The Complaint alleges no facts to suggest that all or any of those safeguards had been jettisoned on the one day he bought food at The Cheesecake Factory, or that they were relaxed in

---

[2] *See* Compl., ¶ 7 ("…the average restaurant served 3,000 people a day.").  Assuming three persons per check, and a conservative figure of half of those customers paying by credit or debit card, that is about 181,500 compliant FACTA receipts per year (assuming two restaurant closings for holidays per year) per store, or about 36 million FACTA compliant receipts per year across the 200 plus stores.  Multiplied by the 10 years that FACTA has been effective extends the number into the hundreds of millions of FACTA compliant transactions.

order to snare his full credit card number.  Yet, Plaintiff seeks to turn these facts on their head to assert willfulness while ignoring the reasonable inferences of compliance and good faith that arise from that 10-year track record of FACTA compliance.  As such, Plaintiff fails to state a plausible claim for a "knowing" or "reckless" violation of FACTA because (1) Plaintiff only pleads facts showing The Cheesecake Factory's knowledge of *FACTA itself*, but not knowledge or recklessness as to its *violation of FACTA*; and (2) Plaintiff fails to overcome the reasonable inferences created by its allegations of The Cheesecake Factory's 10-year history of FACTA compliance over tens of millions of transactions.

### III.    APPLICABLE LEGAL STANDARDS.

To survive a Rule 12(b)(6) motion, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 127 S. Ct. 1955, 1974 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009).  The Court must accept all well-pled factual allegations as true; however, the Court is not required to "ignore specific factual details . . . in favor of general or conclusory allegations." *Griffin Indus., Inc. v. Irvin,* 496 F. 3d 1189, 1205-06 (11th Cir. 2007). Nor is the Court "bound to accept as true a legal conclusion couched as a factual allegation." *Grimshaw v. Graham*, Case No. 13-21302-CIV, 2013 WL 12061477, at *2 (S.D. Fla. Nov. 22, 2013) (Martinez, J.) (*citing Iqbal*, 556 U.S. at 678)).

Likewise, on a Rule 12(b)(1) motion to dismiss containing a facial challenge to subject matter jurisdiction, the court applies a similar standard to Rule 12(b)(6).  *Case v. Miami Beach Healthcare Group, Ltd.*, 166 F. Supp.3d 1315, 1317 (S.D. Fla. Feb. 26, 2016) (Martinez, J.) (*citing McElmurray v. Consolidated Gov't of Augusta-Richmond Cty.*, 501 F.3d 1244, 1251 (11th

Cir. 2007)).  The court must "'look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction.'"  *Id*. (*citing McElmurray*, 501 F.3d at 1251).

## IV.   THE COURT LACKS SUBJECT MATTER JURISDICTION.

### A.   Plaintiff Must Allege "Injury In Fact" For Subject Matter Jurisdiction.

To invoke a federal court's jurisdiction, the plaintiff bears the burden of establishing standing by alleging an "actual case or controversy" pursuant to Article III of the United States Constitution.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  To establish standing, a plaintiff must show that he:

> (1)      has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs, Inc.*, 528 U.S. 167, 180–81 (2000).

In *Spokeo,* the U.S. Supreme Court held that a plaintiff cannot "satisfy the injury-in-fact requirement of Article III" by alleging a "bare procedural violation, divorced from any concrete harm."  *Spokeo*, 136 S.Ct. at 1549.  *Spokeo* described the requisite injury in fact as "'an invasion of a legally protected interest'" that is both "'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  *Spokeo*, 136 S.Ct. at 1548.  Instead, the "'concrete injury' must be '*de facto*'; that is, it must actually exist."  *Id*.  It must be "real" and not "abstract."  *Id*.

However, the Court observed that Congress can legislate to elevate an intangible harm to the level of a *de facto* harm.  *Id*. at 1549.  The Court cautioned that this "does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right."  *Id*.  For

example, a "bare procedural violation, divorced from any concrete harm," does not satisfy the injury-in-fact requirement. *Id*.

*Spokeo* did recognize that the "risk of real harm" can satisfy the injury-in-fact requirement. *Id*. The Court observed that "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact," and in such cases, a plaintiff "need not allege any *additional* harm beyond the one Congress has identified." *Id*. As an example, the Court cited to injury-in-fact that could arise from failure to receive information required by law. *Id*. at 1549 (*citing Federal Election Comm'n v. Akins*, 524 U.S. 11, 20-25 (1998)) and *Public Citizen v. Dep't of Justice*, 491 U.S. 440, 449 (1989)). Thus, the Court held that "a violation of one of the FCRA's procedural requirements may result in no harm." *Id*. at 1550.

The Eleventh Circuit subsequently applied *Spokeo* to a class action alleging a failure to receive informational disclosures pursuant to the Fair Debt Collection Practices Act ("FDCPA"). *Church v. Accretive Health, Inc*., Case No. 15-15708, 654 Fed. Appx. 990 (11th Cir. Jul. 6, 2016) (unpublished). The Eleventh Circuit held that the FDCPA created a "new right…to receive the required disclosures" and the plaintiff's injury was sufficiently concrete because she "did not receive information to which she alleges she was entitled." *Id*. at 994-995. The Eleventh Circuit distinguished the substantive, informational right "to receive certain disclosures" under the FDCPA from the "bare procedural violation" referenced in *Spokeo*. *Id*. at 995 fn. 2.

In concluding that Article III standing may arise from the invasion of legal rights created by statute, the Eleventh Circuit relied on two (2) prior Eleventh Circuit cases that related to informational standing and tangible harm. *Id*. (*citing Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., P.A*., 781 F.3d 1245 (11th Cir. 2015) and *Havens Realty Corp. v. Coleman*, 455

U.S. 363 (1982)).  *Palm Beach Golf* was a *tangible* harm decision in which the Eleventh Circuit held that the requisite concrete harm existed for a Telephone Consumer Protection Act ("TCPA") junk fax violation where the evidence of a tangible harm was uncontested, namely, "there is unrefuted record evidence that the fax information was successfully transmitted by B2B's fax machine and that the transmission occupied the telephone line and fax machine of Palm Beach Golf during that time," thereby rendering it "unavailable for legitimate business messages."  *Havens*, by contrast, was an intangible informational harm case.  *Havens*, 455 U.S. at 368-69.  In *Havens*, certain testers who were lied to about the availability of housing based on their race were held to have standing, even if they had no intent to rent.  *Id*. The Court held that there was an "enforceable right to truthful information concerning…housing."  *Id*. at 373.

In *Nicklaw v. CitiMortgage, Inc*., 839 F.3d 998, 1002 (11th Cir. 2016), the Eleventh Circuit reaffirmed that "'a plaintiff does not 'automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'"  *Id*. (*citing Spokeo*, 136 S.Ct. at 1549).  The class action plaintiff in *Nicklaw* alleged that CitiMortgage violated New York law by failing to record a satisfaction of mortgage within the time period provided by statute.  *Id*. at 1000-01.  The *Nicklaw* plaintiff argued that the legislature had created a right to have a timely certificate of discharge recorded and a private remedy for that right.  *Id*. at 1002.  The *Nicklaw* Court held that the violation of the statutory right was not enough to create a concrete injury because "Article III standing requires a concrete injury even in the context of a statutory violation."  *Id*. (*citing Spokeo*, 136 S.Ct. at 1549).  The Eleventh Circuit recognized that, as *Spokeo* recognized with the FCRA – to which FACTA is an amendment – "not all statutory violations 'cause harm or present any material risk of harm.'"  *Id*. (*citing Spokeo*, 136 S.Ct. at 1550).

The Eleventh Circuit found that Nicklaw had alleged "neither a harm nor a material risk of harm." *Id*. at 1003.  The complaint contained no allegation that Nicklaw "lost money" or that "his credit suffered." *Id*.  Importantly, Nicklaw did "not even allege that he or anyone else was aware that the certificate of discharge had not been recorded during the relevant time period." *Id*. at 1003.  Significantly, *Nicklaw* did recognize a special category of cases where a plaintiff did not need to allege further harm because the intangible harm identified was sufficient.  *Nicklaw* specifically recognized that *Havens*, like the *Akins* decision cited in *Spokeo*, involved an intangible, concrete injury where "a plaintiff [alleges] a violation of a statutory right to receive information." *Spokeo*, 136 S.Ct. at 1549; *Nicklaw*, 839 F.3d at 1002.[3]

### B.  The New Circuit Law.

Subsequent to the District Court cases upon which Plaintiff relies, the Circuits have squarely held against Plaintiff's absolutist position that statutes like FACTA that create a private right of action automatically confer standing when such statutes are violated.  Most recently, on December 13, 2016, the Seventh Circuit squarely held that the plaintiff had not suffered a concrete injury under *Spokeo* where the defendant failed to properly truncate the expiration date on his printed receipt.  *Meyers v. Nicolet Restaurant of De Pere, LLC*, 843 F.3d 724, 725 (7th Cir. Dec. 13, 2016).[4]  The Seventh Circuit reasoned:

> *Spokeo* compels the conclusion that Meyers' allegations are insufficient to satisfy the injury-in-fact requirement for Article III standing. The allegations demonstrate that Meyers did not suffer any harm because of Nicolet's printing of the

---

[3] *Accord*, *Zia v. CitiMortgage, Inc*., Case No. 15-CV-23026, -- F. Supp.3d --, 2016 WL 5369316, at *6 (S.D. Fla. Sept. 26, 2016) (distinguishing *Church*, 654 Fed.Appx. 990 at 993, *Akins*, 524 U.S. at 21-22, and *Havens*, 455 U.S. at 373-75, as "informational standing" cases "where a plaintiff has standing because he seeks to enforce a statutory disclosure requirement"), *appeal filed* (11th Cir. Oct. 24, 2016); *Fisher v. Enter. Holdings, Inc.*, Case No. 15-0372, 2016 WL 4665899, at *4 (E.D. Mo. Sept. 7, 2016) (distinguishing *Church* as involving informational standing).

[4] A petition for certiorari was filed on March 13, 2017 and is pending.  *See* Case No. 16-1113.

expiration date on his receipt. Nor has the violation created any appreciable risk of harm. After all, Meyers discovered the violation immediately and nobody else ever saw the non-compliant receipt. In these circumstances, it is hard to imagine how the expiration date's presence could have increased the risk that Meyers' identity would be compromised.

*Id*. at 727.[5]

Significantly, the Seventh Circuit saw its decision as aligned with the Eleventh Circuit in *Nicklaw* and the law of four other Circuits who have held post-*Spokeo* that the violation of a substantive statute without any harm is not a concrete injury. *Id*. at 728 (*citing Nicklaw*, 839 F.3d at 1002-03, for its holding that there was "no standing where plaintiff alleged that the defendant failed to record a satisfaction of a mortgage within the required 30 days under state statute but alleged no harm flowing from that failure"); *Hancock v. Urban Outfitters, Inc*., 830 F. 3d 511, 514 (D.C. Cir. 2016) (finding no standing where department stores asked for zip codes in violation of consumer protection statutes, but alleged no actual injury); *Lee v. Verizon Commc'ns., Inc*., 837 F.3d 523, 529-30 (5th Cir. 2016) (holding that no standing existed where plaintiff alleged breach of duty under ERISA, but no harm); *Braitberg v. Charter Commc'ns, Inc*., 836 F.3d 925, 930-31 (8th Cir. 2016) (finding no standing where cable company retained personal information in violation of statute, but plaintiff suffered no harm); *Strubel v. Comenity Bank*, 842 F.3d 181, 191-93 (2d Cir. 2016) (finding no standing on two claims where bank allegedly violated Truth in Lending Act, but plaintiff did not allege injury or effect on her credit behavior); *see also Gubala v. Time Warner*, 846 F.3d 909, 910-11 (7th Cir. 2017) (cable subscriber lacked standing based on violation of statute where he alleged no plausible risk of

---

[5] The Seventh Circuit was additionally persuaded by legislative history that it sought to "limit FACTA suits to consumers 'suffering from any *actual harm*.'" *Id*. at 728 (internal citation and quotation omitted) (emphasis added).

harm and only asserted fear of identity theft).[6]

### C.  Plaintiff Has Not Alleged An Injury-In-Fact Under *Spokeo*.

Significantly, Plaintiff has not alleged any actual or imminent damages, but instead seeks only statutory damages as a result of the alleged statutory violations pursuant to 15 U.S.C. § 1681n. *See* Compl., ¶ 67 ("statutory damages, punitive damages, attorney's fees and costs"). Plaintiff's Class Action Complaint is ***entirely devoid of even a single allegation that any injury-in-fact occurred to him as a result of The Cheesecake Factory's alleged conduct***.  For example, Plaintiff alleges that unnamed "consumers" -- not specifically Plaintiff -- "were uniformly burdened with an elevated risk of identity theft." *Id.*, ¶ 41.[7]  This Court has held pre-*Spokeo* that "speculative identity theft" does not confer standing.   *Case*, 166 F. Supp.3d at 1318-19 (dismissing complaint for lack of standing where "Case did not allege that any of her sensitive information was misused, or that she suffered any negative consequences from the data

---

[6] The district courts have subsequently followed the lead of these Circuits.  *See Thompson v. Rally House of Kansas City*, Case No. 15-CV-00886, 2016 WL 8136658, at *5, *12-*14 (W.D. Mo. Oct. 6, 2016) (plaintiff who received printed receipt with more than five digits lacked concrete injury where he did not allege that his "personal credit card information has been exposed generally or that he faces an imminent risk of identity theft"); *Kamal v. J. Crew Group*, Case No. 2:15-CV-190(WJM), 2016 WL 6133827, at *3 (D.N.J. Oct. 20, 2016) (plaintiff who did not allege access by others of the receipt did not demonstrate an imminent or actual risk where store printed more than five digits of his credit card); *Stelmachers v. Verifone Sys.*, No. 5:14-CV-4912, 2016 WL 6835084, at *4 (N.D. Cal. Nov. 21, 2016) (plaintiff who received printed receipt with more than five digits of his credit card lacked standing where only he had seen the receipt, and risk of identity theft was speculative); *Fullwood v. Wolfgang's Steakhouse*, Case No. 13-CIV-07174, 2017 WL 377931, at *6 (S.D.N.Y. Jan. 26, 2017) (plaintiff who received printed receipt with expiration date failed to stat concrete injury where she pled no actual harm beyond violation of the statute); *Cruper-Weinmann v. Paris Baguette America, Inc*., Case No. 13-CIV-7013, -- F. Supp.3d --, 2017 WL 398657, at *4 (S.D.N.Y. Jan. 30, 2017) (customer who received printed receipt with expiration date lacked standing where she did not allege "facts demonstrating that the violation…put her at an increased risk of identity theft").

[7] Although Plaintiff cites Judge Posner's opinion in *Redman v. RadioShack Corp*., 768 F.3d 622, 627 (7th Cir. 2014) to justify its allegations of risk of harm (Compl., ¶ 43), it was Judge Posner who authored *Gubala*, 846 F.3d at 909-10, which rejected that abstract fears of identity theft could be a concrete injury.  *See also Meyers*, 843 F.3d at 728.

breach.").[8]   Plaintiff also alleges, in circular fashion, that the harm from the violation is the violation of FACTA:   "Defendant has caused consumers actual harm…because a portion of the sale from credit or debit card transaction is intended to protect consumer data, including the censoring of credit or debit card digits as required by both state and federal laws." *Id.*, ¶ 41. Plaintiff further alleges a hypothetical invasion of privacy by "employees" or "other persons who might find the receipts in the trash or elsewhere."  *Id.*, ¶¶ 42, 66.  The Court need not trouble with whether those fanciful speculations would be sufficient to create Article III injury-in-fact, because Plaintiff here did not suffer any of those "injuries."  Simply stated, Plaintiff suffered no actual or imminent, concrete injury.

### D.   The Contrary District Court Opinions.

Defendant recognizes that Judge Altonaga and Judge Bloom have held that a violation of FACTA's truncation requirement exposed the plaintiff to a risk of harm that satisfied *Spokeo*'s standing requirement.  *Guarisma v. Microsoft Corp.*, No. 15-24326-CIV, -- F. Supp.3d --, 2016 WL 4017196, at *4 (S.D. Fla. Jul. 26, 2016) (Altonaga, J.); *Wood v. J Choo USA, Inc.*, Case No. 15-CV-81487-CIV, 201 F.Sup.3d 1332, 1340 (S.D. Fla. Aug. 11, 2016) (Bloom, J.); *Bouton v. Ocean Properties, Ltd.*, Case No. 16-CV-80502, 201 F.Supp.3d 1341, 1351-1352, (S.D. Fla. Aug. 15, 2016) (Bloom, J.); *Flaum v. Doctor's Associates, Inc.*, Case No. 16-61198-CIV, 2016 WL 7015823, at *3-*4 (S.D. Fla.  Aug. 29, 2016) (Altonaga, J.)[9].  However, Defendant respectfully submits that the court in those cases (1) relied on Circuit law that has since been receded from; (2) did not have the benefit of *Nicklaw*; and (3) did not have the benefit of recent

---

[8] *Accord, Torres v. Wendy's Company*, 195 F. Supp.3d 1278, 1283 (M.D. Fla. Jul. 15, 2016).
[9] Although four opinions were entered, *Flaum* relies entirely on *Guarisma*, and *Bouton* and *Wood* rely heavily on *Guarisma*.  *Flaum*, 2016 WL 7015823, at *4 (*citing Guarisma*, 2016 WL 4017196, at *7); *Bouton*, 201 F.Supp.3d 1341, 1351-1352 (*citing Guarisma*, 2016 WL 4017196, at *1); *Wood*, 201 F.Sup.3d 1332, 1340 (*citing Guarisma*, 2016 WL 4017196, at *1).

Circuit authority.

The core holding in *Guarisma*, *Flaum*, *Wood*, and *Bouton* was that FACTA created a substantive right to receive a truncated receipt, and that the violation of that right was a concrete injury under *Spokeo*.  To reach this conclusion, the district courts relied heavily upon the sole Circuit Court opinion on point, *Hammer v. Sam's E, Inc.*, 754 F.3d 492, 498-99 (8th Cir. 2014), for the proposition that Congress created a "substantive right for consumers to have their personal credit card information truncated on printed receipts."  *Guarisma*, 2016 WL 4017196, at *4; *Bouton*, 201 F.Supp.3d 1341, 1352; *Wood*, 201 F.Sup.3d 1332, 1337; *Flaum*, 2016 WL 7015823, at *4.  However, just about a month later, the Eighth Circuit decided *Braitberg*, in which it backed away from what it described as the  "absolute view" in *Hammer* that "a violation of a statutory right constitutes an injury in fact that is sufficient by itself to establish standing under Article III."   In *Braitberg*, the court concluded that the "absolute view" had been superseded by the Supreme Court's *Spokeo* decision.  836 F.3d at 929-30 ("In *Spokeo*, however, the Supreme Court rejected this absolute view and superseded our precedent in *Hammer*") (*citing Hammer*, 754 F.3d at 498-99).  Recognizing that the absolutist view espoused in *Hammer* has been "superseded," Eighth Circuit courts now hold that the violation of a statutory right, standing alone, is not enough to constitute the requisite concrete injury.  *Braitberg*, 836 F.3d at 930-31; *Thompson*, 2016 WL 8136658, at *12-*14.  The Eighth Circuit view now aligns with that of the Eleventh Circuit's rejection of the absolutist view in *Nicklaw*.  *See Nicklaw*, 839 F.3d at 1003 ("[T]he requirement of concreteness under Article III is not satisfied every time a statute creates a legal obligation and grants a private right of action for its violation. ***A plaintiff must suffer some harm or risk of harm from the statutory violation to invoke the jurisdiction of a federal court***") (*citing Spokeo*, 136 S.Ct. at 1550) (emphasis added).

*Guarisma*, *Bouton*, *Wood*, and *Flaum* also relied on *Church* and/or *Havens* for the absolutist proposition that Congress can create a substantive right, the violation of which automatically gives rise to a concrete injury.  *Guarisma*, 2016 WL 4017196, at *3; *Bouton*, 201 F.Supp.3d 1341, 1350; *Wood*, 201 F.Sup.3d 1332, 1337; *Flaum*, 2016 WL 7015823, at *3-*4.  However, these courts did not have the benefit of the Eleventh Circuit's two critical holdings in *Nicklaw*. 839 F.3d at 1002.[10]   First, *Nicklaw* rejected the absolutist view that the violation of a statutory right should automatically be a concrete injury.   *See id.* ("Nicklaw argues that he has suffered a concrete injury because New York law creates a right to have a certificate of discharge recorded in a timely manner, ***but the relevant question is whether Nicklaw was harmed when this statutory right was violated***") (emphasis added).   Second, *Nicklaw* recognized that *Havens*, like the *Akins* decision cited in *Spokeo*, involved an intangible, concrete injury where "a plaintiff [alleges] a violation of a statutory right to receive information."   *Spokeo*, 136 S.Ct. at 1549; *Nicklaw*, 839 F.3d at 1002.  Viewed in light of *Nicklaw's* holding, *Church* and *Havens* -- cited by *Guarisma*, *Bouton*, *Wood*, and *Flaum* to undergird their core ruling -- belong to a special class of informational cases where the concrete injury is complete when information is not received.

Finally, *Guarisma*, *Bouton*, *Wood*, and *Flaum* did not have the benefit of the Seventh Circuit decision in *Meyers*, the first post-*Spokeo* Circuit Court opinion directly addressing claims based on FACTA truncation violations.  843 F.3d at 725.  Nor did the courts have the benefit of the numerous Circuit courts that have similarly held that in the absence of concrete harm, a statutory violation standing alone does not pass muster under *Spokeo*.  *See Hancock*, 830 F. 3d at

---

[10] *Nicklaw* was *later* raised in *Flaum* on a *different* motion, a motion for interlocutory appeal, which was rejected due to the "high burden" involved there.  *See Flaum*, DE 40, p. 5; DE 43.

514; *Lee*, 837 F.3d at 529-30; *Braitberg*, 836 F.3d at 930-31; *Strubel*, 842 F.3d at 191-93.[11]

## V.   PLAINTIFF FAILS TO PLEAD A WILLFUL FACTA VIOLATION.

### A.   Willfulness Focuses on Knowledge/Recklessness Regarding the Violation.

Plaintiff fails to state a plausible claim for a "knowing" or "reckless" violation of FACTA because (1) Plaintiff only pleads facts showing The Cheesecake Factory's knowledge of FACTA *itself*, but not knowledge or recklessness as to a violation of FACTA; and (2) Plaintiff fails to overcome to countervailing inferences created by its own allegations that Defendant had been in compliance with FACTA for the prior ten years.  Plaintiff here attempts to state a claim for a violation of the truncation requirement of 15 U.S.C. § 1681c(g).  If the truncation violation is negligent, then a plaintiff can recover only actual damages.  15 U.S.C. § 1681o(a)(1).  If the truncation violation is willful, then a plaintiff can elect between actual damages or statutory damages pursuant to 15 U.S.C. § 1681n(a), which states, in relevant part:

> **(a) In general**
> Any person who **willfully fails to comply with any requirement imposed under this subchapter** with respect to any consumer is liable to that consumer in an amount equal to the sum of--
> > **(1)(A)** any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000;…

15 U.S.C. § 1681n(a) (emphasis added).

---

[11] In the absence of Circuit law directly on point, *Guarisma*, *Bouton*, *Wood*, and *Flaum* resorted to district court cases from other federal districts that were distinguishable.  *See Amason v. Kangaroo Express*, Case No. 7:09-CV-2117-RDP, 2013 WL 987935, at *6 (N.D. Ala. Mar. 11, 2013) (pre-*Spokeo* and pre-*Nicklaw* decision with absolutist view that FACTA creates a substantive right of action) and *Altman v. White House Black Market*, Case No. 1:15-CV-2451-SCJ, 2016 WL 3946780, at *3 (N.D. Ga. July 13, 2016) (pre-*Nicklaw* decision with absolutist view that FACTA creates a substantive right of action sufficient to confer standing, but relying heavily on the "persuasive authority" of *Hammer*, 754 F.3d at 498, which was later receded from in *Braitberg*, 836 F.3d at 929-30)); *see also Cruper-Weinmann*, 2017 WL 398657, at *4 fn. 3 (distinguishing *Guarisma*, *Bouton*, *Wood*, and *Flaum* for reliance on now-receded *Hammer* decision); *Thompson*, 2016 WL 8136658, at *5 (same).

14

In *Safeco Ins. Co. v. Burr*, 551 U.S. 47, 57-58 (2007), the U.S. Supreme Court defined the "willfully" to include both knowing and reckless violations.  The Court held that recklessness was an "action entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.'"  *Id*. at 68 (*citing Farmer v. Brennan*, 511 U.S. 825, 836 (1994)).  The Court cited the Restatement as follows:

> The actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, *knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.*

*Id*. at 69 (*citing* 2 RESTATEMENT (SECOND) OF TORTS, § 500, p. 587 (1963-64)) (emphasis added).  The *Safeco* Court concluded that:  "a company subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that *the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless*."  *Id.* at 69 (emphasis added).

In *Travelers Property Casualty Co. of Am. v. Kansas City Landsmen, LLC*, the Eleventh Circuit clarified that the term "willfully" was directed at *violations* of FACTA, and not directed at the Defendant's mental state regarding FACTA's requirements:

> The "knowledge" allegations in these paragraphs [of a pleading], though, go only to the [defendants'] alleged knowledge of FACTA's *requirements,* not their knowledge of any alleged *violations* of its requirements. But Section 1681n, the section on which [this] Action is premised, concerns itself with the defendant's mental state as it relates to alleged non-compliance—*i.e.,* violations—only, not with the defendant's mental state with regard to the statute's requirements.

No. 14-11006, 592 Fed. Appx. 876, at 883 (11th Cir. Jan. 12, 2015) (footnote omitted).

Similarly, in *Keller v. Macon County Greyhound Park, Inc*., Case No. 3:07-CV-1098-WKW, 2011 WL 1559555, at *4 (M.D. Ala. Apr. 25, 2011), *aff'd*, 464 Fed. Appx. 824 (11th Cir.

Mar. 20, 2012), the court focused on "knowledge" or "willfulness" *as to the violation*. *See id*. at *4 (granting summary judgment where "there is no argument or any supporting facts that MCGP acquired knowledge that it was printing FACTA violative receipts prior to December 5, 2007"). Under *Safeco*, *Travelers*, and *Keller*, the focus of the allegations of willfulness pursuant to 15 U.S.C. § 1681n(a) must center on knowledge and recklessness *as to the violation*, and not on "defendant's mental state with regard to the statute's requirements." *Safeco*, 551 U.S. at 69; *Travelers*, 592 Fed. Appx. at 883; *Keller*, 2011 WL 1559555, at *4. Indeed, if knowledge of FACTA through widespread publicity or merchant agreements were enough to satisfy willfulness, the standard would be a dead letter -- satisfied in every case.

### B.   Plaintiff's Allegations Fail to Raise A Plausible Inference of Willfulness.

With that background in mind, Plaintiff pleads the following facts arguably relevant to the willfulness standard:

- The FACTA requirements were "widely publicized among retailers." Compl., ¶ 16.

- "Card issuing organizations proceeded to require compliance with FACTA by Contract…" *Id.*, ¶ 17.

- "Congress passed The Credit and Debit Card Receipt Clarification Act of 2007 in order to make technical corrections to the definition of willful noncompliance with respect to violations involving the printing of an expiration date on certain credit and debit card receipts before the date of the enactment of th[e] Act." *Id.*, ¶ 18.

- "In the interim, card processing companies continued to alert their merchant clients, including Defendant, of FACTA's requirements…" *Id.*, ¶ 20.

- "…the processing companies have required that credit card or debit card expiration dates not be shown since 2003 and still require it." *Id.*, ¶¶ 21-22.

- "Defendant had actual knowledge of the statute's requirements." *Id.*, ¶ 26.

- "Most of Defendant's business peers and competitors currently and diligently ensure their credit card and debit card receipt printing process remains in compliance. *Id.*, ¶ 27.

- "Not only was Defendant so informed not to print the expiration date of credit or debit cards, it was contractually prohibited from doing so." *Id.*, ¶ 28.

- "Notwithstanding the fact that it has **extensive knowledge of the requirements of FACTA** and the dangers imposed upon consumers through its failure to comply, Defendant, as of the date this action was commenced, continues to issue point of sale receipts…" *Id.*, ¶ 40 (emphasis added).

- "Upon information and belief, the violations at issue arose when Defendant installed dozens (if not hundreds) of new credit and debit card payment systems in its many restaurants across the United States." *Id.*, ¶ 29.

Boiled to their essence, Plaintiff's "knowledge" and "recklessness" allegations are that Defendant had *knowledge of FACTA*. Plaintiff's allegations focus on Defendant's mental state of mind concerning FACTA's requirements. Nowhere within the Complaint does Plaintiff allege facts concerning Defendant's mental state of mind concerning *the violation itself*. Quite the opposite, Plaintiff also pleads the following additional facts that raise contrary inferences:

- "**Upon information and belief, prior to the rollout of the new point-of-sale system, Defendant had a written policy in place requiring the truncation of credit card account numbers**…" *Id.*, ¶ 30 (emphasis added).

- "…**this is evidenced by the fact that prior to the installation of the aforementioned retail system, Defendant was actually truncating credit card account numbers**" *Id.*, ¶ 30 (emphasis added).

- In fact, Defendant's Senior Systems Analyst's from 2006 to 2013 **specific task among others was ensuring FACTA compliance**, confirming that Defendant has been long since aware of the requirements to truncate certain credit card information on receipts" *Id.*, ¶ 26 (emphasis added).

- "Upon information and belief, **a manual was provided to Defendant's restaurants for the operation of the new point-of-sale system which explained that the retailer is able to determine which fields will appear on a printed receipt and further explained that the retailer is able to truncate credit card numbers and mask expiration dates**." *Id.*, ¶ 31 (emphasis added).

- "Upon information and belief, it would take an individual less than one minute to

run a test receipt in order to determine whether the point-of-sale system was in compliance with federal law(s) or **Defendant's own alleged written policy requiring the truncation of credit card numbers**." *Id.*, ¶ 32 (emphasis added).

- Plaintiff's receipt had the "first six (6), along with the last four (4) digits of his credit card account number," but did not reference an expiration date. *Id.*, ¶ 35.

Instead of raising inferences that nudge Plaintiff's willfulness claim across the line into plausibility, these facts raise opposing reasonable inferences that defeat plausibility:

(1) that Defendant had attempted, and was attempting, to comply with FACTA by concealing -- albeit allegedly improperly -- part, but not all of the credit card numbers (and the expiration date);

(2) that Defendant had been in actual compliance with FACTA during the ten (10) year period since its December 4, 2006 effective date;

(3) that using Plaintiff's allegations,[12] The Cheesecake Factory's instances of proper compliance with FACTA would run into the tens or hundreds of millions of transactions over the ten (10) year period;

(4) that, for at least seven (7) of the ten (10) preceding years that Defendant had been in full compliance with FACTA, Defendant specifically employed an individual for at least seven (7) years that had the express responsibility to ensure compliance with FACTA; and

(5) that Defendant had a written policy mandating truncation of credit card numbers and a manual enabling truncation of credit card numbers. *Id.*, ¶¶ 30-32.

Where the allegations do not focus on the mental state of the defendant *regarding the alleged violation*, and thereby raise a plausible inference that the conduct was willful, then the complaint will not state a claim. *See Torongo v. Roy,* 176 F. Supp.3d 1320, 1324 (S.D. Fla. 2016); *King v. MovieTickets.com,* 555 F. Supp.2d 1339, 1341 (S.D. Fla. 2008) (willfulness lacking where plaintiff focused on the defendant's knowledge of FACTA requirements and on notice of FACTA requirements "by major credit card companies and by its own merchant service providers" and not on the state of mind concerning the violation).

---

[12] *See* footnote 2, *supra*.

In *Torongo*, the plaintiff brought a FACTA class action based on a veterinarian's receipt.

*Id*. at 1322.  Judge Middlebrooks dismissed the class action for failure to raise a plausible willful

violation of FACTA, stating as follows:

> There are no factual allegations supporting Plaintiff's conclusory allegation that
> Defendant knew he was violating FACTA by providing Plaintiff the Bill for
> Services with her credit card's expiration date. In an effort to plead knowledge,
> Plaintiff cites to the wide publication of FACTA's requirements and credit card
> processing companies' (such as Visa and American Express) instructions to
> merchants….Plaintiff contends that Defendant knowingly ignored these
> instructions by including the expiration date on the Bill for Services….***The most
> Plaintiff alleges is that Defendant knew of FACTA and its requirement for
> receipts printed by an electronic or point of sale terminal***. See *Crupar-
> Weinmann v. Paris Baguette America, Inc*., No. 13-CV-7013, 2014 WL 2990110,
> at *4 (S.D.N.Y. June 30, 2014) ("[T]o survive defendant's motion to dismiss,
> plaintiff's Complaint must plead sufficient facts to support a plausible inference
> that defendant knew that its conduct was violating [FACTA], and not simply that
> defendant knew about the existence of the [FACTA] provision at issue").[13]
> Indeed, Plaintiff alleges that Defendant provided a FACTA-compliant Credit Card
> Slip, and fails to offer any plausible reason why Defendant would comply with
> FACTA in one instance, and knowingly violate FACTA in the second. Thus,
> Plaintiff has not pled facts from which I can infer that Defendant knowingly
> violated FACTA…..Neither has Plaintiff pled a reckless violation of FACTA.
> Receipt is not defined in the statute and neither Party has cited to, and the Court is
> unaware of any, case law interpreting "receipt." Similarly, neither has cited to any
> regulatory authority defining receipt….***Accordingly, Plaintiff has not pled a
> willful violation of FACTA***. See Safeco, 551 U.S. at 68-71, 127 S.Ct. 2201.

*Id*. at 1324-25 (citations omitted) (emphasis added).

Unlike here, where the allegations focus on facts about the defendant's mental state

concerning the violation -- and not simply the defendant's mental state regarding FACTA's

requirements -- the standard is met.  *See, e.g., Steinberg v. Stitch & Craft*, Case No. 09-60660-

CIV, 2009 WL 2589142, at *4 (S.D. Fla. Aug. 18, 2009) (willfulness was properly alleged where

plaintiff alleged that defendant knew of FACTA, but "did not wish to incur the additional

---

[13] The initial dismissal order in *Crupar-Weinmann*, 2014 WL 2990110, at *4, was vacated in
light of *Spokeo*, and on remand, the district court dismissed exclusively on *Spokeo* grounds.
*Cruper-Weinmann*, 2017 WL 398657, at *4.

expense of reprogramming or updating its point-of-sale equipment"); *Bouton v. Ocean Properties, Ltd.*, 201 F. Supp.3d 1341, 1350 (S.D. Fla. 2016) (requisite willfulness present where "Plaintiff claims that Defendant has been sued for similar violations in the past"); *Moody v. Ascenda USA, Inc.*, 193 F. Supp.3d 1347, 1352 (S.D. Fla. Jun. 24, 2016) (willfulness adequately pled where plaintiff alleged that "Defendant has previously violated the FCRA, and that Defendant has previously been sued for nearly identical violations of the FCRA").

However, where the Complaint raises reasonable inferences that the Defendant was trying to comply with FACTA and any lapse was inadvertent, courts have invariably found the requisite willfulness lacking. *See Vidoni v. Acadia Corp.*, Case No. 11-CV-00448-NT, 2012 WL 1565128, at *4-*6 (D. Maine Apr. 27, 2012) (willfulness lacking where "[t]he allegation that the Defendant actually was complying with FACTA at other locations undermines the Plaintiff's claim that the Defendant willfully violated FACTA at the Jordan Pond House Restaurant. The only reasonable inference from the Defendant's failure to implement FACTA at one of its locations and not others is that the Defendant's failure was inadvertent"); *Alexander v. Golden Nugget, Inc.*, Case No. 2:13-cv-02005-LDG-NJK, 2014 WL 12576611, at *3 (D. Nev. Jul. 18, 2014) (necessary inference lacking where "according to the plaintiff's allegations, Landry's was attempting to comply with FACTA").

Plaintiff's non-existent allegations concerning The Cheesecake Factory's intent, in the face of strong countervailing inferences created by its ten year track record of compliance fail to state a claim for a willful violation of FACTA.  The Complaint should be dismissed.

Respectfully submitted,

GREENBERG TRAURIG, P.A.
401 East Las Olas Boulevard, Suite 2000
Fort Lauderdale, FL  33301
Telephone: 954-765-0500/Facsimile: 954-765-1477

By: */s/ John L. McManus*

PAUL B. RANIS
Florida Bar No. 64408
Email:  ranisp@gtlaw.com; rosr@gtlaw.com;
JOHN L. McMANUS
Florida Bar No. 0119423
Email: mcmanusj@gtlaw.com;
yeargina@gtlaw.com; FLService@gtlaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 24th day of March 2017, I served the foregoing by filing it via CM/ECF which will generate Notices of Electronic Filing to all counsel of record on the attached Service List by electronic mail.

*/s/ John L. McManus*
JOHN L. MCMANUS FTL 111125321v1

## *SERVICE LIST*

CASE NO.: 17-cv-60229-JEM
DR. DAVID S. MURANSKY v. THE CHEESECAKE FACTORY INCORPORATED
d/b/a THE CHEESECAKE FACTORY

---

*Counsel for Plaintiff*

BRET LEON LUSSKIN, JR., ESQUIRE
**BRET LUSSKIN, P.A.**
20803 Biscayne Boulevard
Suite 302
Aventura, FL 33180
Telephone:  954-454-5841
Facsimile: 954-454-5844
Email: blusskin@lusskinlaw.com

SCOTT DAVID OWENS, ESQUIRE
**SCOTT D. OWENS, P.A.**
3800 S. Ocean Drive
Suite 235
Hollywood, FL 33019
Telephone: 954-589-0588
Facsimile: 954-337-0666
Email: scott@scottdowens.com

KEITH JAMES KEOGH, ESQUIRE
**KEOGH LAW, LTD.**
55 W. Monroe
Suite 3390
Chicago, IL 60603
Telephone: 312-726-1092
Facsimile: 312-726-1092
Email: Keith@Keoghlaw.com

*Counsel for Defendant*

PAUL B. RANIS, ESQUIRE
Email:  ranisp@gtlaw.com; rosr@gtlaw.com
JOHN L. McMANUS, ESQUIRE
Email: mcmanusj@gtlaw.com;
yeargina@gtlaw.com; FLService@gtlaw.com
**GREENBERG TRAURIG, P.A.**
401 East Las Olas Boulevard
Suite 2000
Fort Lauderdale, FL  33301
Telephone: 954-765-0500
Facsimile: 954-765-1477

LINDA RECK, ESQUIRE
Email:  reckl@gtlaw.com;
culpepperd@gtlaw.com
**GREENBERG TRAURIG, P.A.**
450 South Orange Avenue
Suite 650
Orlando, FL 32801
Telephone: 407-254-2643
Facsimile: 407-650-8428

*FTL 111171508v2*